**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAN A. DRUZ,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY, INC., (f/k/a DEAN WITTER REYNOLDS, INC. AND MORGAN STANLEY DW), CHRISTINE EDWARDS, DONALD KEMPF, DAVID HELENIAK, GARY LYNCH AND PAUL THOMAS,<br><br>Defendants. | Civil Action No.:<br>10-6281 (PGS)<br><br><br>MEMORANDUM & ORDER |

This case comes before the Court on defendants Morgan Stanley & Company, Inc. ("Morgan Stanley"), Christine Edwards, Donald Kempf, David Heleniak, Gary Lynch and Paul Thomas's (collectively, the "Defendants") motion for summary judgment. Defendants' originally filed a motion to dismiss plaintiff Dan A. Druz's ("Plaintiff") complaint for failure to state claim and for a permanent injunction precluding Plaintiff from filing further state and federal litigation [Docket Entry No. 7]. As Defendants' arguments necessarily incorporated matters outside the pleadings, the Court converted the motion to dismiss into a motion for summary judgment and granted the parties two weeks to file any additional factual material pertinent to Defendants' motion. [Docket Entry No. 15]. No materials were filed before the deadline.

For the reasons stated below, Defendants' motion for summary judgment of Plaintiff's complaint is granted, and Defendants' motion for a permanent injunction precluding Plaintiff from filing further state and federal litigation is denied.

**I**

The relevant facts in this case begin back in 1985, during a period when Plaintiff worked as an executive for Dean Witter, a predecessor of Morgan Stanley ("Dean Witter").  In 1985, the New Jersey School Boards Association Insurance Group ("Insurance Group"), an adjunct of the New Jersey School Boards Association ("NJSBA"), was the largest of eight separate groups of public school boards formed to participate in joint self-insurance funds.  On July 1, 1985, the Insurance Group expanded its coverage from workers' compensation insurance to other lines of insurance, including property insurance, casualty insurance, liability insurance and inland marine insurance.  This expansion of coverage led to an increase in the premiums that Insurance Group members paid to the Insurance Group and a proportionate increase in the funds available for the Insurance Group's investment.  Some time after the coverage expansion, NJSBA's then-executive director Octavius T. "Ted" Reid, Jr. retained Plaintiff to handle the Insurance Group's investments.

In May 1987 it came to light among the Insurance Group's principals that, during the course of Plaintiff's management of the Insurance Group's investments, the Insurance Group lost nearly a million dollars.  The reason for the loss is disputed, and Plaintiff attributes the loss to Dean Witter's use of derivatives to hedge their investments. Compl. ¶ 11.  On June 17, 1987, before news of the loss became public, Plaintiff voluntarily resigned from Dean Witter to accept a position as branch manager for Shearson Lehman Hutton in Melville, New York.  On December 30, 1988, the Insurance Group brought a civil action in Federal District Court against Dean Witter and Plaintiff for participating in high-volume, speculative trading and circumventing procedural safe guards for the purpose of generating commissions. *N.J. Sch. Bds. Ass'n Ins. Grp. v. Dean Witter Reynolds Inc.*, No. 2:88-cv-5584 (J. Bissell) (D.N.J., Dec. 30, 1988).  Before the civil action was resolved, on April 26,

2

1990, the State of New Jersey's Commission of Investigation released a report on the alleged improprieties at the NJSBA.  The Commission found, among other things, that Plaintiff ignored written directives and statutory investment restrictions while maintaining an improper relationship with Mr. Reid that included an unsecured, low interest $12,000 loan.

Plaintiff faced several actions as a result of the civil litigation and the report.  First, the New Jersey Division of Consumer Affairs, Bureau of Securities (the "Bureau") began an investigation of Plaintiff.  In January 1992, the Bureau made a criminal referral to the N.J. Division of Criminal Justice.  A New Jersey grand jury then returned an indictment against the Plaintiff.  Subsequently, Plaintiff petitioned for Pre-Trial Intervention, which was granted.  Second, Plaintiff was investigated by the New York Stock Exchange ("NYSE").  In May 1993, the NYSE censured Plaintiff and barred him from membership for eight years.  That decision was affirmed by the NYSE's Board of Directors, then both of those decisions were affirmed separately by both the SEC and the Third Circuit.  Third, Plaintiff was named in a related attorney ethics complaint that was ultimately resolved in his favor.

In his complaint, Plaintiff alleges that Morgan Stanley (as successor to Dean Witter) and the individual defendants (all of whom were or are high ranking members of Morgan Stanley's legal department) committed fraud, conspired to commit fraud, and effected malicious prosecution by blaming Plaintiff for Dean Witter's improper conduct.  Plaintiffs' litigation of these and similar matters has a long and complicated history.

Plaintiff first began pressing claims against Dean Witter and its employees back in April 1995 when Plaintiff filed an arbitration with the NYSE ("*Druz I*").  In *Druz I*, Plaintiff charged Dean Witter and several of its employees with provoking the civil, criminal, and regulatory proceedings

against him. *See Dean Witter Reynolds*, 71 Fed. App'x 941, 943 (3d Cir. 2003). *Druz I* was either stayed or delayed for ten years, although the precise reasons for the stay/delay are not entirely clear from the record.[1] On May 13, 2005, Plaintiff filed an amended statement of claim for essentially the same activities. On April 4, 2007, following a two-week hearing, the NYSE panel dismissed the majority of Plaintiff's claims and ruled in Plaintiff's favor for an amount roughly equivalent to the book of business Plaintiff left at Dean Witter. *See* Marino Cert., Ex. B, 4/4/07 Award of NYSE Panel in *Druz I*.

In November 2007, Plaintiff filed a second arbitration before the Financial Industry Regulatory Authority ("FINRA") in which Plaintiff reiterated the conspiracy allegations from the previous arbitration ("*Druz II*"). Thereafter, a FINRA panel fully considered those allegations during an arbitration hearing that spanned forty sessions. Ultimately, the FINRA panel dismissed Plaintiff's claims in their entirety. Marino Cert., Ex. D *Druz II* Award.

On June 25, 2009, Plaintiff filed an action in the Superior Court of New Jersey, Law Division, Monmouth County to vacate the *Druz II* award (the "*Vacatur Action*"). In the *Vacatur Action*, Plaintiff argued that the *Druz II* award should be vacated because (1) the *Druz II* award was procured by corruption, fraud, or other undue means; (2) the arbitrators refused to consider material evidence; and (3) the arbitrators manifestly disregarded the law. Marino Cert, Ex. G, Druz Vacatur Br.

---

[1] In 1995, Dean Witter sought an injunction in the District Court for the District of New Jersey against the matter going forward. The District Court held that the arbitration on the malicious prosecution claims could not go forward until the New Jersey criminal case was resolved. No appeal was filed, and the criminal case appears to have resolved by 1998, when Plaintiff completed his Pre-Trial Intervention.

On September 16, 2009—while Plaintiff's motion to vacate the *Druz II* award in the *Vacatur Action* was still pending—Plaintiff filed a second FINRA arbitration against Morgan Stanley and the individual Defendants named in this action ("*Druz III*"). Once again, Plaintiff alleged that Morgan Stanley (as successor to Dean Witter) and its employees conspired to frame him.

In response to *Druz III*, the Defendants filed a summary action in the Superior Court of New Jersey, Law Division, Monmouth County, applying for an Order to Show Cause with Temporary Restraints ("*Summary Action*"). Specifically, the Defendants sought (1) a temporary restraining order staying *Druz III* and (2) a permanent injunction precluding Plaintiff from pursuing *Druz III* or otherwise seeking to vacate and rearbitrate the *Druz II* award. Essentially, the Defendants argued that the *Druz III* arbitration was an attempt by the Plaintiff to use a subsequent arbitration to appeal, vacate, and rearbitrate the *Druz II* award.

Both the *Vacatur Action* and the *Summary Action* were assigned to the Honorable Daniel M. Waldman, J.S.C. On August 13, 2010, Judge Waldman decided both actions in favor of the Defendants. *See Druz v. Morgan Stanley Inc.,* MON-L-3100-09 (N.J. Super. Ct. Law Div. Aug. 13, 2010); *Morgan Stanley & Co., Inc. v. Druz*, MON-L-6065-09 (N.J. Super. Ct. Law Div. Aug. 13, 2010). In the *Vacatur Action*, the court confirmed the *Druz II* award, considering and rejecting each of Plaintiff's arguments for vacatur, including the argument that the *Druz II* award was procured by fraud. In the *Summary Action*, the court entered an order (1) declaring that *Druz III* presented a non-arbitrable dispute and that any other arbitration seeking to vacate and re-arbitrate the *Druz II* award would present a non-arbitrable dispute; (2) enjoining Plaintiff from pursuing *Druz III* and from otherwise seeking to vacate and re-arbitrate the *Druz II* award; and (3) permanently staying *Druz III*. The court explaining its reasoning in the *Summary Action* as follows:

> *Druz III* is merely [Plaintiff's] attempt to challenge the loss in *Druz
> II* and re-arbitrate the *Druz II* decision on the grounds that same was
> procured by fraud.   Such an allegation does not arise out of
> [Plaintiff's] employment with Morgan Stanley.  Thus, the *Druz III*
> arbitration falls outside the scope of the arbitration agreement. . . .
> Defendant's claims in *Druz III*, that Morgan Stanley and several of its
> employees committed acts of fraud during the course of the *Druz II*
> FINRA arbitration, thereby causing [Plaintiff] to lose that arbitration,
> are allegations that were more appropriately made in the vacatur
> action . . . , not in a third arbitration.  The court will not permit
> [Plaintiff] to circumvent the vacatur process by having a third FINRA
> panel re-arbitrate the *Druz II* award.

*Morgan Stanley & Co., Inc. v. Druz,* MON-L-6065-09, at 10 (N.J. Super. Ct. Law Div. Aug. 11,

2010).  On August 27, 2010, Plaintiff filed a Notice of Appeal of both the *Vacatur Action* and the

*Summary Action* with the Superior Court of New Jersey, Appellate Division.  Both appeals are still

pending.

On December 6, 2010, Plaintiff filed the complaint in this action [Docket Entry No. 1].  In

their motion for summary judgment, Defendants argue that this complaint rests on the precise

contentions resolved adversely to Plaintiff in *Druz II*: that Morgan Stanley and its employees

conspired to frame Plaintiff for the conduct for which he was indicted and barred from the securities

industry.  In response, Plaintiff argues that the present issue is "the tort of Malicious Prosecution as

against the former attorneys for [Morgan Stanley], an issue that was dismissed from consideration

in the arbitration proceeding known as *Druz II*." Opp'n Br. 2.[2]

---

[2]

Defendants also moved for a permanent injunction enjoining Plaintiff from filing against
Morgan Stanley, its affiliated entities and its employees in any further federal or state lawsuits based
on the contention that they conspired to frame him and provoke his malicious prosecution.  Plaintiff
did not address this issue in his opposition brief.

II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Such a fact is considered material only if the fact may affect the outcome of the litigation based on the substantive law. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party must produce specific facts showing that there is a genuine issue for trial. *Jersey Cent. Power & Light Co. v. Twp. of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985) (citation omitted). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) (*citing* Fed. R. Civ. P. 56(e)).

III

Plaintiffs' complaint is barred by res judicata.  The doctrine of res judicata, also known as claim preclusion, embodies "[t]he concept that a party is required to bring all possible claims in one proceeding." *McNeil v. Legislative Apportionment Comm'n of the State of N.J.*, 828 A.2d 840, 858 (N.J. 2003).  Thus, "[c]laim preclusion 'gives dispositive effect to a prior judgment in the particular issue, albeit not litigated in the prior action, could have been raised." *Witkowski v. Welch*, 173 F.3d

192, 199 n.8 (3d Cir. 1999) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)).  Under principles of claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979).  Moreover, "[c]laim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *McNeil*, 828 A.2d at 859 (internal quotations omitted).

 Under New Jersey law, claim preclusion applies to bar subsequent claims when the following requirements are met:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Id.* (quoting *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991)).  All three of those requirements are met with respect to the *Druz II* award that was confirmed in the *Vacatur Action*.

 As to the first requirement, it is well settled that an arbitration award such as the FINRA Panel's ruling in <u>Druz II</u> is deemed a "final judgment" when it is confirmed by a court. *See Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 337 (D.N.J. 1994).  In addition to being "final," the *Druz II* award and the confirmation order were valid and "on the merits" as the FINRA Panel dismissed all of Druz's claims and Judge Waldman confirmed that dismissal and rejected Druz's grounds for vacatur. *See Druz v. Morgan Stanley Inc.,* MON-L-3100-09, at 10-11 (N.J. Super. Ct. Law Div. Aug. 13, 2010).

The second requirement for application of res judicata is also met here, as the parties in this action are either identical to or in privity with those in *Druz II* and the *Vacatur Action*.  Plaintiff was the claimant in *Druz II* and the plaintiff in the *Vacatur Action*.  Plaintiff named Morgan Stanley as a respondent in *Druz II*, the *Vacatur Action*, and in the instant action.   While the individual Defendants in this action were not parties to *Druz II* or the *Vacatur Action*, they are all Morgan Stanley employees in privity with Morgan Stanley. *See, e.g., Jones v. Holvey*, 29 F.3d 828, 830 (3d Cir. 1994).

Finally, the third requirement for application of res judicata, that the claims in this action grow out of the same transaction or occurrence as those in *Druz II* and the *Vacatur Action*, is satisfied.  In determining whether this final prong has been met, the New Jersey Supreme Court has instructed courts to consider:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first; and (4) whether the *material* facts alleged are the same.

*Culver v. Ins. Co. of N. Am.*, 559 A.2d 400 (N.J. 1989) (internal citations omitted).

In the instant case, Plaintiff complains of a twenty-two year conspiracy to frame Plaintiff. Compl. Frauds 1-223.  These are the same issues decided by the FINRA Panel in *Druz II* and in the Confirmation Order.  Druz himself summarized his demand in *Druz II* as alleging that respondents "conspired to frame him, then they engaged in a massive cover up of their misconduct." Vacatur Compl. ¶ 15.  Druz's complaint in this action likewise theorizes that the Defendants "blamed Plaintiff for [Morgan Stanley's] allegedly improper conduct" in an effort "to ruin Plaintiff's

securities and law careers; to cause his suspension from the brokerage business; to cause his disbarment; and to secure his incarceration." Compl. ¶ 18.  Further, the *Druz II* demand and complaint allege the same specific actions as constituting the efforts of Morgan Stanley and its employees to frame Plaintiff.  Here, the first 217 alleged frauds are identical to the alleged fraudulent acts in *Druz II*.  Moreover, the four claims Plaintiff asserts in the Complaint in this action—fraud, malicious prosecution, conspiracy to commit malicious prosecution, and failure to supervise in-house and outside counsel—were all pled in the *Druz II* Demand.  Furthermore, although the last six frauds set forth in Druz's Complaint were not pled in the Amended *Druz II* demand (because they allegedly occurred during the arbitration) they mirror the grounds on which Plaintiff sought to vacate the *Druz II* award.  Also of note, in the *Summary Action*, the issue of why claims against Morgan Stanley's legal staff were not incorporated into *Druz II* was directly addressed by Judge Waldman:

> It should also be noted that, when the court questioned [Plaintiff] at oral argument on August 11, 2010 as to why he never named the members of Morgan Stanley's legal department in *Druz I* or *Druz II*, [Plaintiff] had no explanation and specifically stated that he did not know why he did not name these individuals.

*Morgan Stanley & Co. Inc. v. Druz*, MON-L-6065-09, at 10 (N.J. Super. Ct., Law Div. Aug. 11, 2010).  These facts clearly grow out of the same transaction or occurrence as those in *Druz II* and the *Vacatur Action*.  In Plaintiff's Opposition Brief, Plaintiff argues that "[i]n order to demonstrate that the claims and issues have been previously litigated, Defendants must cite to the Award in Druz II." Opp'n Br. 6.  Plaintiff does not cite to any law to support this claim.  Additionally, the materials that are in the record, including Plaintiff's complaints, Plaintiff's brief and the award itself, provides ample proof that the claims and issues have been previously litigated.  Finally, Plaintiff was given

10

an opportunity to provide any additional relevant information to develop the factual record and failed to do so.  Thus, Defendants' motion for summary judgment is granted.

IV

Defendants also move for a permanent injunction precluding Plaintiff from filing further state and federal litigation. [Docket Entry No. 7].  District courts have the power "to issue injunctions restricting the filing of meritless pleadings by litigants where the pleadings raise issues identical or similar to those that have already been adjudicated." *In re Packer Avenue Assoc's.*, 884 F.2d 745, 747 (3d Cir. 1989).  However, while Defendants have provided proof that Plaintiff has been litigious, Plaintiff has only filed one federal claim related to this matter and one arguably frivolous arbitration proceeding (*Druz III*). *Cf. Gilgallon v. Carroll*, 153 Fed. App'x 853, 855-56 (3d Cir. 2005).  In the absence of additional frivolous or vexatious claims, the equities weigh against the requested injunction.

ORDER

This matter, having come before the Court on Defendants' motion to dismiss and for a permanent injunction precluding Plaintiff from filing further state and federal litigation [Docket Entry No. 7], and Defendants' motion to dismiss having been converted into a motion for summary judgment by the Court [Docket Entry No. 15], and this Court having considered the parties' submissions without oral argument; and for the reasons stated above,

IT IS on this 6th of March, 2012,

ORDERED that Defendants' motion for summary judgment is granted; and

ORDERED that Defendants' motion for a permanent injunction precluding Plaintiff from filing further state and federal litigation is denied; and

ORDERED that Plaintiff's complaint is dismissed and this case is closed.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

12